IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOUGLAS A. TURNER, and wife, <br> DIANE TURNER, <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY NATIONAL LIFE <br> INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:06cv0639 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

Before the Court is defendant Liberty Life Insurance Company's Motion to Dismiss Or, In the Alternative, Motion for Summary Judgment (Doc. No. 12). The motion has been fully briefed and is ripe for consideration.

For the reasons set forth below, the Court declines to consider the motion as one for summary judgment, and will grant in part and deny in part the defendant's motion to dismiss for failure to state a claim. Specifically, to the extent plaintiff Douglas A. Turner is attempting to state a Tennessee common-law claim for retaliation, and thereby to expand Tennessee law regarding retaliatory discharge in violation of public policy, such attempt fails and the defendant's motion to dismiss that claim will be granted. The defendant's motion to dismiss Mr. Turner's claims for violation of the Tennessee Jury Duty Statute and his wife's loss of consortium claims will be denied.

**I.     Factual Background**

The Turners are husband and wife and are citizens of Rutherford County, Tennessee. Liberty Mutual Life Insurance Company ("Liberty Mutual") is a non-Tennessee corporation with its principal place of business in Birmingham, Alabama. Mr. Turner began his employment with Liberty Mutual in June 1974. Since then, he has served as a Sales Agent, Senior Underwriter, NSAA Qualifier, and NQA Qualifier. Mr. Turner is still employed with Liberty Mutual as a Senior Underwriter.

In early February of 2006, Mr. Turner received a summons to appear for grand jury duty in Murfreesboro, Rutherford County, Tennessee. The next day, Mr. Turner showed the summons to his District

Manager, Bill Hampton. Upon seeing the summons, Mr. Hampton allegedly told Mr Turner, "You know how to get out of that." (Compl. ¶ 7.) Notwithstanding this comment, Mr. Turner did not "get out of" jury duty and instead served on the grand jury from Monday, February 6, 2006 through Wednesday, February 8, 2006. He had expected also to serve on February 9, 2006 but ended up not being called to duty that day. Because of the grand jury summons and his expectation, based upon speaking with Chancellor Robert Corlew, that his services would be required Monday through Thursday, Mr. Turner had cancelled all his appointments for the week of Monday, February 6, 2006, including a meeting with a Ms. Matheny which was set for Wednesday of that week. Before receiving the jury summons, Mr. Turner had planned to be out of town for vacation on Friday, February 10 and to return on Monday, February 13, 2006. This vacation day had already been approved by Mr. Hampton.

Once Mr. Turner discovered that he did not have to sit on the grand jury on Thursday, February 9, he attempted to reschedule some work appointments for that day. He was able to process a death claim of an insured, to meet with another client about his wife's insurance, and to meet with two clients who were delinquent in their payments. Mr. Turner also stopped by the home of Ms. Matheny but she was not there at the time. On Friday, February 10, Mr. Turner left on his previously scheduled vacation. On Monday, February 13, when Mr. Turner returned from his trip, he met with Ms. Matheny and sold her a life insurance policy for her teenage son whose last name is McCoy.

On Wednesday, February 15, Mr. Turner submitted the documents for the McCoy policy to the appropriate employees at Liberty Mutual. Also on Wednesday, Mr. Turner learned of a new company policy that required additional documentation from Ms. Matheny in order to secure her son's insurance policy, specifically a bank draft form from the applicant. After obtaining the bank draft form from Ms. Matheny, Mr. Turner submitted it to Liberty Mutual on Thursday, February 16, 2006. Liberty Mutual, however, did not actually issue the policy until February 27, 2006. Mr. Turner was told that the reason for the delay was the need to obtain a Moving Violation Report ("MVR") in regards to Mr. McCoy. Mr. Turner was told that Liberty Mutual did not receive the MVR until Monday, February 27, 2006. Mr. Turner claims that he has no way to verify that assertion, and further asserts that he is not aware of any other instance in which Liberty Mutual required an MVR before issuing a life insurance policy for a 16- or 17-year-old.

2

Liberty Mutual sales employees are eligible for a monthly bonus if they meet certain criteria related to premiums averaged over the previous thirteen weeks. For premiums to be calculated into that average, the agent must ensure the policies for which he seeks credit are issued by month-end, which is considered to be the last Friday of each month. In this case, that day was Friday, February 24, 2006; Monday, February 27, 2006 was considered the first work day of the March bonus period. Because the McCoy policy was not issued until Monday, February 27, 2006, it did not count towards the bonus period ending on February 24, 2006. Because the McCoy policy was not taken into consideration for February, Mr. Turner was unable to meet the premium average requirement and therefore did not receive a bonus for the period ending on February 24. Had the McCoy policy been included in that period, however, he would have received a bonus for that period in the amount of $1,963. Mr. Turner claims that if Liberty Mutual had "subtracted the three days Mr. Turner actually served on the grand jury from the 13 week period designated as qualifying for the bonus, he would have still qualified for the $1,963.00 bonus even though the Defendant waited until February 27, 2006 to issue the policy Mr. Turner had sold to Ms. Matheny for Mr. McCoy." (Compl. ¶ 18.)

In a letter to Chancellor Robert Corlew, attached as an exhibit to the Complaint and incorporated therein by reference, Mr. Turner alleges that, "[b]efore last year's convention," he and his fellow sales personnel were informed by Ms. Robbie Davis, a member of the issuing department, that if all the information needed on a policy was received by noon on the Wednesday prior to the end of the bonus period, then the policy could be counted during that bonus period, even if it was not actually issued until after the end of the period. Ms. Davis told them that if the sales personnel "ever had any problems such as this (policy held up because information not received) let her know and they would do their best to get it handled." (Compl., Ex. A.) Further, Mr. Turner asserts that another Liberty Mutual employee, Jim Lewis, had previously been allowed to count a policy towards his bonus that was issued the day after the period ended. In that situation, Mr. Lewis contacted Ms. Davis and informed her he had a policy issued one day after the bonus qualifying date. She made a phone call, and Mr. Davis's policy "was credited for bonus." (*Id.*)

Mr. Turner likewise called Ms. Davis and told her he had had "a problem the same as Jim Lewis the previous year." (*Id.*) Ms. Davis told him she now worked for a different department and could not help him, but suggested he have his manager e-mail Terry Davis in the issuing department. However, Terry Davis's

3

response was "Sorry—information received Monday morning."[1]

Mr. Turner subsequently filed a grievance with his employer. When it was denied, he filed his claim in the Circuit Court for Rutherford County, Tennessee at Murfreesboro on June 8, 2006. Liberty Mutual filed a Notice of Removal on June 27, 2006 based on 28 U.S.C. § 1446(d). This Court's jurisdiction is premised on complete diversity among the parties.

## II.     Standard of Review

Although Liberty Mutual has requested that this motion be treated as a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment, the Court will not convert this motion to one for summary judgment. There is not enough information in the record to justify consideration of the case under Rule 56. Therefore, this motion will be considered under Rule 12(b)(6), without prejudice to the defendant's ability to file a motion for summary judgment once discovery has been completed.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "treats all well-pleaded allegations in the complaint as true," and dismissal is proper "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002) (citation omitted). The Court must, of course, construe the complaint in the light most favorable to the plaintiff. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although . . . exhibits attached to the complaint also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted); *see also* Fed. R. Civ. P. 10 ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). The Court may therefore consider the letters attached to the plaintiffs' complaint and referenced therein without converting the motion into one for summary judgment.

## III.    Analysis

Based on the facts set forth in his complaint, Mr. Turner alleges that Liberty Mutual violated the Jury Duty Statute, Tenn. Code Ann. § 22-4-108(a)(1), (b)(1) and (f)(1). Specifically, Mr. Turner claims Liberty

---

[1] It is not clear which Monday this statement refers to, but the Court assumes that it refers to Monday, February 27, 2006.

4

Mutual violated § 22-4-108(a)(1) when it insisted on including the three days Mr. Turner served on jury duty within the thirteen-week bonus calculation period, thereby "effectively fail[ing] to excuse Mr. Turner from employment for the days he served. " (Compl. ¶ 25.) He claims Liberty Mutual violated § 22-4-108(b)(1) by refusing to issue the McCoy policy until the first work day after the conclusion of the thirteen-week bonus period, thus "effectively fail[ing] to pay Mr. Turner his usual compensation for the period he served as a juror." (Compl. ¶ 26.) Mr. Turner claims that Liberty Mutual had permitted other employees to receive a bonus under similar circumstances, and that Liberty Mutual's actions amounted to discrimination against Mr. Turner for serving on the grand jury in violation of Tenn. Code Ann. § 22-4-108(f)(1). (Compl. ¶ 27.) In addition, Mr. Turner appears to be attempting to state a common law claim for retaliation against him for complying with his civic obligation to perform jury duty. (*See* Compl. ¶ 28.) Finally, plaintiff Diane Turner states a derivative loss of consortium claim. (Compl. ¶ 31.) Mr. Turner is suing for $1.5 million in compensatory damages and $15 million in punitive damages. Mrs. Turner is suing for $50,000 in compensatory damages and $500,000 in punitive damages.

Liberty Mutual seeks dismissal of Mr. Turner's Jury Duty Statute claims and his common-law retaliation claim, as discussed below.

### A. Mr. Turner's Claim for Retaliation in Violation of Public Policy

Liberty Mutual argues that Tennessee law recognizes a claim for retaliatory *discharge* in violation of public policy, and that Mr. Turner has failed to state such a claim because it is clear that he was not actually discharged. He is, in fact, still employed by Liberty Mutual. In response, Mr. Turner simply argues that, "[w]hile there is no Tennessee case directly on point, appellate courts from other states have extended the tort of retaliatory discharge to include more than just discharges." (Doc. No. 15, at 2.) Mr. Turner also contends that his retaliation claim should be analyzed consistently with federal case law concerning retaliation in the employment context, which recognizes that "employers can retaliate against employees in many different ways." (Doc. No. 16, at 5, citing *Burlington N. v. Santa Fe Ry. Co.*, 126 S. Ct. 2406, 2414–15 (2006).)

It is not entirely clear to the Court whether Mr. Turner is attempting to state a common-law cause of action for retaliation in violation of public policy or if he is simply stating that the "retaliation" he allegedly suffered was in violation of the anti-discrimination provisions of the Jury Duty Statute. Regardless, to the

5

extent he is attempting to state a separate common-law claim for retaliation based upon *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), such a claim must fail. Tennessee has repeatedly articulated the elements of a claim for retaliatory *discharge* as including an actual discharge. *See Yates v. Hertz Corp.*, 285 F. Supp. 2d 1104, 1110–11 (M.D. Tenn. 2003) ("The Tennessee Supreme Court has articulated four elements that an employee who has been terminated must show to make out the common law tort of retaliatory discharge: '(1) that an employment-at-will relationship existed; (2) that the employee was discharged; (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.' " (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002), and citing *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002); *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997); *Hodges*, 833 S.W.2d at 899; *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444–45 (Tenn. 1984)). There are no Tennessee cases extending the doctrine to situations that did not involve an actual discharge or constructive discharge.

Even if this Court were inclined to extend Tennessee law, the cases relied upon by the plaintiff would not be persuasive in that regard because in those cases the plaintiffs claimed retaliatory demotion or failure to promote, or at a minimum a retaliatory disciplinary action, none of which is at issue here. (*See* Doc. No. 16, at 11–12 (citing *Powers v. Springfield City Sch.*, No. 98-CA-10, 1998 WL 336782, at *5 (Ohio Ct. App. June 26, 1998) (finding that a denial of promotion was actionable under Ohio common law because Ohio courts have recognized an action for unlawful discharge/discipline in violation of public policy); *Brigham v. Dillon Cos.*, 935 P.2d 1054, 1058 (Kan. 1997) (recognizing an action for retaliatory demotion under Kansas law when an employee is demoted after filing a workers compensation claim).) Rather, the "retaliation" claim asserted in the case at bar is indistinguishable from the discrimination claim asserted under the Jury Duty Statute and does not appear to require extension of Tennessee common law for the provision of a remedy.

While other states have expanded the common law action of retaliatory discharge in violation of public

6

policy, Mr. Turner has presented no evidence that Tennessee has expanded the cause of action or that it would be inclined to expand it to the degree sought by Mr. Turner. The Court therefore declines the invitation to extend Tennessee's law of retaliatory *discharge* to include within its scope the type of activity alleged here. Consequently, to the extent Mr. Turner attempts to state a claim for retaliation in violation of Tennessee public policy, his claim fails because he has not been discharged, a necessary element of the claim. *Cf. Crews*, 78 S.W.3d at 862. Liberty Mutual's Motion to Dismiss will therefore be granted as it pertains to Mr. Turner's claim of retaliation, or retaliatory discharge, in violation of public policy.

### B. Mr. Turner's Claim that Liberty Mutual Violated the Tennessee Jury Duty Statute

The applicable portions of the Tennessee Jury Duty Statute state as follows:

(a)(1) Upon receiving a summons to report for jury duty, any employee shall on the next day the employee is engaged in such employee's employment exhibit the summons to the employee's immediate superior, and the employee shall thereupon be excused from employment for the day or days required of the employee while serving as a juror in any court of the United States or the state of Tennessee. . . .

. . . .

(b)(1) Notwithstanding the excused absence as herein provided, the employee shall be entitled to such employee's usual compensation received from such employment, less the amount of the fee or compensation the employee received for serving as a juror, except that the employer may pay the employee such employee's usual compensation without deducting an amount equal to the fee or compensation the employee received for such employee's jury service.

. . . .

(f)(1) No employer shall discharge or in any manner discriminate against an employee for serving on jury duty if such employee, prior to taking time off, gives the required notice pursuant to subsection (a) to the employer that such employee is required to serve.

Tenn. Code Ann. § 22-4-108(a)(1), (b)(1) and (f)(1). Mr. Turner alleges a violation of each of these sections.

In its motion, Liberty Mutual's sole argument in favor of dismissal of the Jury Duty Statute claims is that § 22-4-108(f)(1) only provides a remedy to plaintiffs who have been "discharged, demoted, or suspended," and that, because he does not allege that he was discharged, demoted or suspended, Mr. Turner has not stated a claim for violation of the jury duty statute.

Liberty Mutual's argument misses the mark. Tennessee courts have clearly held that the statutory remedies set forth in the statute are not exclusive. *See, e.g.*, *Hodges*, 833 S.W.2d at 899. Moreover, the language of the § 22-4-108 as a whole dictates against such a narrow construction. Under Liberty Mutual's

7

proposed interpretation, an employee whose regular wages were withheld for the time he participated in jury duty but who otherwise was not discharged, demoted or suspended would have no cause of action. Such an outcome, besides being absurd, would clearly defeat the purpose of the statute. The defendant's proposed interpretation also ignores the language of the statute which forbids employers from "discharg[ing] *or in any manner discriminat[ing]*" against an employee for serving jury duty. Tenn. Code Ann. § 22-4-108(f)(1) (emphasis added). The prohibition against discriminating "in any manner" surely would encompass a wider range of possible behaviors than discharge, suspension and demotion.

Liberty Mutual's motion to dismiss the Jury Duty Statute claim will therefore be denied.

### C.  *Mrs. Turner's Loss of Consortium Claim*

Liberty Mutual only argues that if Mr. Turner's claims are dismissed, then Ms. Turner's derivative claim must likewise be dismissed. As indicated above, the Court will deny the motion to dismiss Mr. Turner's claims based upon Liberty Mutual's alleged violation of the Jury Duty Statute; consequently, the motion to dismiss Ms. Turner's loss of consortium claim will likewise be denied.

### IV.  Conclusion

For the reasons set forth above, to the extent Mr. Turner has attempted to state a common-law claim for retaliation in violation of Tennessee public policy, such a claim will be dismissed. In all other respects, Liberty Mutual's Motion to Dismiss will be denied without prejudice to the defendant's ability to seek summary judgment once the facts of this case have been fully developed.

An appropriate order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

8

Case 3:06-cv-00639   Document 22   Filed 05/16/07   Page 8 of 8 PageID #: 216